**RECEIVED**

JAN 2 9 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DELLA JANICE | CIVIL ACTION NO. 06-922 |
| VERSUS | JUDGE DOHERTY |
| UNITED STATES OF AMERICA, ET AL | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Currently pending before the Court is the government's "Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1), or Alternatively, Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56(b)" [Rec. Doc. 14], wherein the government moves this Court to: (1) dismiss plaintiff's suit, arguing this Court lacks jurisdiction over the subject matter; or alternatively (2) grant summary judgment in defendant's favor as to all claims brought by plaintiff, arguing "there exists no genuine issue of material fact."

### Background

This civil suit arises from injuries plaintiff, Della Janice, alleges she sustained after slipping and falling on the steps at a United States Postal Service office in Eunice, Louisiana. Jurisdiction in this matter is premised upon the Federal Tort Claims Act ("F.T.C.A."), 28 U.S.C. §§ 1346(b), 2671-2680.[1] The following facts, taken from defendant's statement of undisputed material facts, are not in dispute [See Rec. Doc. 17]:

---

[1] 28 U.S.C. § 1346(b) provides, in pertinent part: "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

1. On June 13, 2005, Della Janice was descending the steps at the Eunice Post Office.

2. In the year before the accident, Della Janice visited the Eunice Post Office at least twice a month. She maintained a post office box at that location to receive certain mail like her retirement checks.

3. The fall was immediately reported to the postmaster and an ambulance was called and a report made.

4. The time of the accident was 10:30 am and the day was bright and sunny.

5. **The steps were not wet or slippery and there was nothing that she observed which had either been spilled on the steps or which got in her way and caused her to trip.**

6. Postal records show that the Postal Service acquired the land on which this facility was built on June 1, 1938 and that the Postal Service has occupied the facility continuously since 1939.

7. In 1981, the four federal standard-setting agencies (USPS, Department of Defense, Department of Housing and Urban Development and General Services Administration) created, through a task force, the RE-5, Standards for Facility Accessibility by the Handicapped. This document governs accessibility standards for the handicapped in federal facilities.

. . . .

11. The steps at issue were built in 1938-1939 and have been in continuous use ever since that time.

[Rec. Doc. 14-2 (citations omitted)]

In her complaint, plaintiff asserts the following "acts or omissions" by defendant, which she argues were the cause of her accident:

8.

Petitioner alleges the accident and resulting injuries were caused solely and proximately by the gross negligence of said defendant herein or their agents and/or employees and that said gross negligence, being particularly, but not exclusively, set forth as follows, to wit:

-2-

1. Failing to keep the steps of the building in good, safe, condition.

2. Allowing the slip protection grips to deteriorate.. [sic]

3. Not replacing the slip protection grips in order to make the steps safe to the public.. [sic]

4. Failing to warn perspective users of the condition of said steps.

5. Failing to maintain the premises in good safe condition.

6. Not doing what it should have done and seeing what it should have seen under the circumstances.

7. Having in his custody ruined or defective property.

8. Not properly supervising its employees to maintain the steps in a good, safe, condition.

9. Not having or providing for a handicap ramp.

10. Other acts of negligence not presently known to petitioner but which may be proved by trial on the merits.

9.

All defendants are liable according to strict liability standards in addition to general negligence law, including, but not limited, to Louisiana Civil Code Articles 2315, 2316, 2317, and 2322, due to the construction, repair, custody, and failure to warn of an unsafe premises and premise surface and the allowance of use of said surface by the plaintiff and other members of the public, and therefore are liable based on the principles of strict liability; petitioner further alleges that there was no victim fault, contributory negligence, or comparative negligence on the part of petitioner in this matter.

### Standards of Law

A. **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The Fifth Circuit holds:

> Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure

> allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.
>
> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.
>
> . . . .
>
> Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. FED.R.CIV.P. 12(b)(6). The test for determining the sufficiency of a complaint under Rule 12(b)(6) was set out by the United States Supreme Court as follows: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Ramming v. United States, 281 F.3d 158, 161-62 (5th Cir.2001)(citations omitted).

When considering a motion which seeks dismissal pursuant to Rule 12(b)(1), or alternatively seeks summary judgment pursuant to Rule 56, the Court must determine if subject matter jurisdiction is present before considering the substantive arguments of the summary judgment motion. Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1157 (5th Cir.1981).

**B.    Motion for Summary Judgment**

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; see also, Moody v. Jefferson Parish School Board, 2 F.3d 604, 606 (5th Cir.1993); Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
> 
> . . . .
> 
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace

conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

Lujan v. National Wildlife Federation, 497 U.S. 871, 884, 888-89 (1990)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

## Analysis

A.  **Federal Tort Claims Act**

The government argues this matter should be dismissed in its entirety, because it has not waived its sovereign immunity for the claims asserted by plaintiff in this matter. Alternatively, the government argues summary judgement should be granted in its favor, dismissing plaintiff's suit in its entirety, because there exist no genuine issues of material fact and plaintiff cannot carry its burden under existing and applicable law.

As stated by the United States Supreme Court:

> Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Loeffler v. Frank, 486 U.S. 549, 554 (1988); Federal Housing Administration v. Burr, 309 U.S. 242, 244 (1940). Sovereign immunity is jurisdictional in nature. Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941). See also United States v. Mitchell, 463 U.S. 206, 212 (1983)("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

One of the vehicles by which the United States has waived its sovereign immunity is the Federal Torts Claims Act ("F.T.C.A."), 28 U.S.C. § 2671, *et seq.* Williamson v. U.S. Dept. of Agriculture, 815 F.2d 368, 374 (5th Cir. 1987). "The statute provides broadly that the United States will accept liability for common torts committed by its agents to the same extent and in the same manner as liability would attach to a private individual in similar circumstances." Id. (citing United States v. Orleans, 425 U.S. 807, 813 (1976); Thomas v. Calavar Corp., 679 F.2d 416, 418 (5th Cir.1982)). Liability is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* Cleveland ex rel. Cleveland v. U.S., 457 F.3d

397, 403 (5th Cir. 2006)("State substantive law applies in suits brought under the FTCA, . . . and we apply the law of the state in which the suit arises . . . .")

1.  **Strict Liability**

Defendant argues "to the extent Plaintiff's complaint asserts a claim against the United States sounding in strict liability, and same can be found in paragraph 9 of Plaintiff's original complaint, such claim should be dismissed with prejudice." [Rec. Doc. 14, p. 4]  Plaintiff concedes in her opposition memorandum, "that case law will not allow strict liability claims against the Federal Government." [Rec. Doc. 16, p. 1]  However, she argues "Paragraph 9 contains allegations of negligence as well as strict liability and the rest of plaintiff's petition is based solely on negligence. . . ." [Id.]

The Court finds the "claim" in this matter is not a "strict liability claim," but rather, a delictual/tort claim.  Whether defendant's "fault" (*see* LA. CIV. CODE ANN. ART. 2315) is premised upon negligence or strict liability is the pertinent inquiry.  Essentially, strict liability is liability without fault (premised upon an owner or custodian's relationship to property), whereas negligence requires a finding of fault prior to imposition of liability.  *See e.g.* Kent v. Gulf States Utilities Co., 418 So.2d 493 (La. 1982).  In Laird v. Nelms, 406 U.S. 797, 798-99 (1972), the United States Supreme Court stated the F.T.C.A. precludes claims based on strict liability, due to the statutory language which requires a "negligent or wrongful act or omission of any employee of the Government."[2]  As the Court finds there are no "strict liability claims" per se to dismiss, the motion

---

[2] The Court additionally notes strict liability has been abolished in Louisiana. *See e.g.* 12 William E. Crawford, Louisiana Civil Law Treatise: Tort Law §§ 19.1, 19.2 (2nd ed. 1996); *see also* Stiebing v. Romero, 2007 WL 4553964 (La.App. 5 Cir.)(this change in the law became effective April 16, 1996).

is denied. However, the parties are to be cognizant of the fact that any remaining claims must be proven by plaintiff, at trial, using a negligence standard.

2. **Premises Liability**

Defendant argues "to the extent Plaintiff's negligence claim against the United States is based upon general premises liability, such claim should also be dismissed with prejudice." [Rec. Doc. 14, p. 4] Defendant reasons "[t]he majority of the claims set forth by Plaintiff, including 1-8 and 10 [of ¶ 8 of her Complaint, *supra*], fall squarely under either strict liability or premises liability."[3] [Id. at 6] Defendant concludes that the United States cannot be "liable for some generalized duty to inspect and maintain premises, where there is absence of an allegation of a specific act of negligence committed by a Government employee," arguing such liability would be "tantamount to finding the Government strictly liable for the vast amount of property owned by the United States." [Id.] The Court notes the Fifth Circuit has not addressed this precise issue.

Defendant primarily relies on <u>Cupit v. United States of America</u>, 964 F.Supp. 1104 (W.D. 1997), a case decided by Judge Little of the Alexandria Division of this district, in support of its position. However, while the <u>Cupit</u> court did hold that the United States had not waived sovereign immunity for suits based on "general premises liability under state law," and thus dismissed plaintiff's claims "to the extent that they are founded on general state law premises liability," that court's holding was not as sweeping as defendant seems to imply. Although the <u>Cupit</u> court did hold that the claimant could not bring claims "against the United States to the extent that they are founded on general state law premises liability," it then specifically noted "[t]his does not end our

---

[3]It seems by defendant's use of the phrase "the majority of the claims," it implicitly concedes dismissal of *all* claims is not appropriate.

inquiry," as there were outstanding claims of negligence (brought pursuant to LA. CIV. CODE ANN. art. 2315) for the acts or omissions of government employees who allegedly caused the defect in the premises. Thereafter, the court denied the government's motion for summary judgment as to plaintiff's claim of negligence, finding a rolled rug, over which plaintiff tripped and fell, was the cause-in-fact of plaintiff's injuries, and factual issues existed with regard to breach, thus requiring dismissal of the government's summary judgment motion.

Additionally, the Court notes there is a more recent ruling, decided by Judge Melancon of this division of the Western District, which discusses the Cupit opinion, yet reaches the opposite conclusion. *See* Jamison v. United States, 491 F.Supp.2d 608, 619 (W.D. La. 2007)(After an examination of Cupit, as well as rulings out of the 2nd, 6th, 10th and 11th Circuit appellate courts, which also reached a conclusion contrary to Cupit, J. Melancon states "this Court does not find that . . . an action for negligence for general premises liability where the negligence of a specific [federal] employee has not been alleged is absolutely barred under the Federal Tort Claims Act.") The government ignores the Jamison decision in its briefing.

Although several district courts in the Fifth Circuit have relied on the Cupit decision to dismiss *all* claims of premises liability (even those involving acts of employee negligence contributing to the defect in premises), this Court is of the opinion a claim for negligence arising out of action taken or not taken in conjunction with a premises exists somewhere "in between" the holdings of Cupit and Jamison. Under Louisiana law, the basis of liability for injuries sustained by one on the premises of another (i.e. "premises liability") is found in LA. CIV. CODE ANN. arts. 2315, 2317, 2317.1 and 2322. *See e.g.* Fontenot v. Fontenot, 635 So.2d 219 (La. 1994); Leonard v. Ryan's Family Steak Houses, Inc., 939 So.2d 401 (La.App. 1 Cir. 2006). In order to prove such a claim, the

plaintiff must show: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause-in- fact of the resulting injury; and (4) defendant had actual or constructive knowledge of the risk.[4][5][6] *See e.g.* Fontenot, *supra*; Vinccinelli v. Musso, 818 So.2d 163, 165 (La.App. 1st Cir.2002).

Thus, it seems to this Court, one can assert a claim under the F.T.C.A. for general injury

---

[4] Prior to the abolition of strict liability, plaintiff's *prima facie* burden consisted only of elements 1 - 3, above. The fourth element (knowledge) was added after the standard changed from strict liability to negligence, and thus the *prima facie* burden shifted from liability without fault, to liability premised upon fault.

[5] As stated in Hutchinson v. Knights of Columbus, Council No. 5747, 866 So.2d 228, 235 (La. 2004):

> [W]hether a condition of a thing is unreasonably dangerous requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature.

[6] By contrast, in order to impose liability for general negligence (as opposed to premises liability), courts undertake a duty-risk analysis. Under that analysis, a plaintiff must prove:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element);
> (2) the defendant failed to conform his or her conduct to the appropriate standard of care (breach of duty element);
> (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
> (4) the defendant's substandard conduct was the legal cause of the plaintiff's injuries (the scope of protection element); and
> (5) actual damages (the damages element.)

Westchester Fire Ins. Co. v. Haspel-Kansas Inv. P'ship, 342 F.3d 416, 419 (5th Cir. 2003) (citing Pinsonneault v. Merchs. & Farmers Bank & Trust Co., 816 So.2d 270, 275-76 (La. 2002)). "Whether a duty is owed is a question of law. Whether defendant has breached a duty is a question of fact." Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La. 1993); *see also* Dupre v. Chevron U.S.A., Inc., 20 F.3d 154, 157 (5th Cir. 1994)("Duty varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved.")

allegedly sustained in conjunction with a premises *if* the unreasonable risk of harm or unreasonably dangerous condition (i.e. the "defect" in the premises) was either: (1) caused by the negligent or wrongful act or omission of a federal employee, or (2) the unreasonably dangerous condition was known to a government employee, yet he or she failed to act (i.e. a failure to warn of or correct the unreasonably dangerous condition). For example, if the alleged accident occurred on the premises due to an employee's negligence in keeping the facility's stairs free of ice, potentially, there could exist a claim arising out of the employee's action or failure to act in conjunction with the condition of the premises with knowledge of a risk of harm, and thus the alleged injury was caused by the action or inaction of a federal employee, and thus, such a claim could properly fall under the jurisdiction of the F.T.C.A.[7] However, if one brings a claim under the F.T.C.A. for general premises liability based purely upon some inherent quality of the premises of which no government employee is aware - i.e. there exists an inconsistent rise in the steps leading to the post office, but there has never been a slip and fall on the stairs, and thus no federal employee is aware the steps are unreasonably dangerous - it seems the Court would be without jurisdiction to hear such a claim.

Again, plaintiff's sole allegations of "acts or omissions" committed by defendant, which she argues were the cause of her accident are as follows:

8.

---

[7]This Court's finding is bolstered by the Fifth Circuit opinion in Salim v. United States, 382 F.2d 240, 242 (5th Cir. 1967). In that matter, the Court below had found the government was "negligent" in failing to keep icy steps clear at a post office building. The Fifth Circuit stated "[s]uch finding is in accordance with Louisiana law and is well supported by the evidence." The Court then went on to discuss the case using the "premises liability" standard (rather than the duty/risk standard), stating: "Under Louisiana law the duty owed an invitee by an occupier of premises includes the duty to use ordinary care to keep its premises in a reasonably safe condition. (Although this case was brought prior to the abolition of strict liability, the Court discusses the government employees "knowledge" of the icy conditions. Thus, it seems the Court applied a negligence standard to a "premises liability" claim.)

Petitioner alleges the accident and resulting injuries were caused solely and proximately by the gross negligence of said defendant herein or their agents and/or employees and that said gross negligence, being particularly, but not exclusively, set forth as follows, to wit:

1. Failing to keep the steps of the building in good, safe, condition.
2. Allowing the slip protection grips to deteriorate.. [sic]
3. Not replacing the slip protection grips in order to make the steps safe to the public.. [sic]
4. Failing to warn perspective users of the condition of said steps.
5. Failing to maintain the premises in good safe condition.
6. Not doing what it should have done and seeing what it should have seen under the circumstances.
7. Having in his custody ruined or defective property.
8. Not properly supervising its employees to maintain the steps in a good, safe, condition.
9. Not having or providing for a handicap ramp.
10. Other acts of negligence no presently known to petitioner but which may be proved by trial on the merits.

9.

All defendants are liable according to strict liability standards in addition to general negligence law, including, but not limited, to Louisiana Civil Code Articles 2315, 2316, 2317, and 2322, due to the construction, repair, custody, and failure to warn of an unsafe premises and premise surface and the allowance of use of said surface by the plaintiff and other members of the public, and therefore are liable based on the principles of strict liability; petitioner further alleges that there was no victim fault, contributory negligence, or comparative negligence on the part of petitioner in this matter.

The foregoing recitation of allegations reveals plaintiff alleges she fell, in part, due to a condition of the steps (chiefly, it seems, a deterioration of the slip protection grips), yet she admits "[t]he stairs were not wet or slippery." Nor was there anything "she observed. . . which got in her way and caused her to trip." As the purpose of slip protection grips is, it would seem, to protect one from falling on wet or slippery steps, and as nothing – one would presume including deteriorated slip protection grip strips – got in her way causing her to trip, it appears defendant has successfully carried its burden of identifying *an absence of evidence* tending to show the alleged deterioration of the slip protection grips were the cause-in-fact of plaintiff's injuries.

However, plaintiff's broad allegations can also be construed in a manner embracing a failure to warn of a known risk whereby plaintiff asserts a dangerous condition caused her to fall (i.e. "having in its custody ruined or defective property," **if** that allegation were coupled with **both** knowledge **and** a failure "to warn perspective users of the condition of the steps.")

Additionally, plaintiff alleges defendant was negligent by not providing a handicap ramp. Defendant argues the Eunice Post Office is under no obligation to provide a handicap ramp. The only support defendant has provided for its position however, is its conclusory statement in its motion that the "Standards for Facility Accessibility by the Handicapped" (apparently a government publication which has not been provided to the Court) does not require a ramp be provided for buildings built prior to 1984, and a similar conclusory statement by its expert, John Campo, who relies on the same publication, and who states in his report the publication is attached to his declaration, yet the attachment has not been provided to the Court.

Additionally, in Johnson v. Sawyer, 47 F.3d 716, 727 (5th Cir. 1995)(footnotes omitted), the Fifth Circuit noted:

-14-

The FTCA, subject to several exceptions, waives the sovereign immunity of the United States, making it liable in tort "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, for certain damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) (emphasis added). While as a matter of abstract linguistics the phrase "law of the place where the act or omission occurred" might be thought to include generally applicable federal law, it has long been settled that it does not, and that "the liability of the United States under the Act [FTCA] arises only when the law of the state would impose it." Brown v. United States, 653 F.2d 196, 201 (5th Cir.1981). Thus, even a violation of the United States Constitution, actionable under Bivens, is not within the FTCA unless the complained of conduct is actionable under the local law of the state where it occurred. Brown at 201.

It follows, of course, and has consistently been held, that "the FTCA was not intended to redress breaches of federal statutory duties." Sellfors v. United States, 697 F.2d 1362, 1365 (11th Cir.1983). As the Second Circuit said in Chen v. United States, 854 F.2d 622, 626 (2d Cir.1988):

> "The FTCA's 'law of the place' requirement is not satisfied by direct violations of the Federal Constitution, *see* Contemporary Mission, Inc. v. U.S.P.S., 648 F.2d 97, 104-05 n. 2 (2d Cir.1981); Birnbaum v. United States, 588 F.2d 319, 328 (2d Cir.1978), or of federal statutes or regulations standing alone, Cecile Indus., Inc. v. United States, 793 F.2d 97, 100 (3d Cir.1986); Art Metal-U.S.A., Inc. v. United States, 753 F.2d 1151, 1157-58 (D.C.Cir.1985); Birnbaum, 588 F.2d at 328; Nichols [v. Block], 656 F.Supp. [1436] at 1444-45 [(D.Mont.1987)]. The alleged federal violations also must constitute violations of duties 'analogous to those imposed under local law.' Cecile Indus., 793 F.2d at 100 (quoting Art Metal, 753 F.2d at 1158.)"

*See also*, e.g., Zabala Clemente v. United States, 567 F.2d 1140, 1149 (1st Cir.1977) ("... even where specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability"); Gelley v. Astra Pharmaceutical Products, Inc., 610 F.2d 558, 562 (8th Cir.1979) ("... federally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons").

We have long followed this rule. United States v. Smith, 324 F.2d 622, 624-25 (5th Cir.1963) (the FTCA "simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs" and is unavailable where "[t]he existence or nonexistence of the claim" "depends entirely upon Federal statutes"); Brown; Tindall v. United States, 901 F.2d 53, 56 at n. 8 (5th Cir.1990) ("a federal regulation cannot establish a duty owed to the plaintiff under state law," citing Smith ). See also Bosco v. U.S. Army Corps of Engineers, 611 F.Supp. 449, 454 (N.D.Tex.1985).

This is not to say that the required state law must be one directly applicable to the conduct of federal employees or to the precise activity from which the claim arose. The Supreme Court made this clear in Indian Towing Co. v. United States, 350 U.S. 61, 64-65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955), where it held that the United States could be liable under the FTCA for the Coast Guard's negligence in the operation of its lighthouse, asserting "it is hornbook tort law that one who undertakes to warn the public of a danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." See also Block v. Neal, 460 U.S. 289, 293-95, 103 S.Ct. 1089, 1092, 75 L.Ed.2d 67 (1983). Although Indian Towing did not expressly refer to state law, subsequent decisions have made plain that in FTCA cases "the application of the 'Good Samaritan' doctrine is at bottom a question of state law." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 816 n. 12, 104 S.Ct. 2755, 2765 n. 12, 81 L.Ed.2d 660 (1984). See also Sheridan v. United States, 487 U.S. 392, 400-01, 108 S.Ct. 2449, 2455, 101 L.Ed.2d 352 (1988). If the government undertakes to perform a duty, such as to furnish a lighthouse service or direct air traffic, and negligently performs that duty, then it may be liable under the FTCA if a similarly situated private enterprise would be liable under the local law good Samaritan rule. We have applied the same theory in FTCA cases involving air traffic controllers. See Gill v. United States, 429 F.2d 1072, 1075 (5th Cir.1970).

The teaching of these authorities is that the violation of a federal statute or regulation does not give rise to FTCA liability unless the relationship between the offending federal employee or agency and the injured party is such that the former, if a private person or entity, would owe a duty under state law to the latter in a nonfederal context. If the requisite relationship and duty exist, then the statutory or regulatory violation may constitute or be evidence of negligence in the performance of that state law duty.[8]

---

[8] *See also* Poynter v. United States, 55 F.Supp.2d 558, 564-65 (W.D.La.1999)(Walter, J.) In that matter, a handicapped post office patron fell on the steps of a post office and sued the government under F.T.C.A. She alleged, in part, the government was negligent by not making the post office handicapped accessible. Judge Walter held liability under the F.T.C.A. arises only when the law of the state would impose it (citing Johnson), and therefore, the court examined the negligence claim under Louisiana's

Due to the foregoing, it is clear the Court must look to Louisiana law (rather than the "Standards for Facility Accessibility by the Handicapped") to determine whether Ms. Janice has stated *a claim* under the F.T.C.A. Under Louisiana law, "the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm." Dupre v. Chevron U.S.A., 20 F.3d 154, 157 (5th Cir. 1994)(quoting Mundy v. Dep't of Health and Human Resources, 620 So.2d 811, 813 (La. 1999)). As already stated, a claimant must show: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause-in-fact of the resulting injury; and (4) defendant had actual or constructive knowledge of the risk. Fontenot, *supra*; Leonard, *supra*. Whether the property is unreasonably dangerous turns upon the following considerations: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost

---

duty/risk analysis. The Court found the following:

> Under Louisiana law, Defendants have a duty to exercise reasonable care. The duty of an occupier of a premises to an invitee is to exercise that care for the safety of an invitee in a manner commensurate with the particular circumstances *565 involved. Socorro v. City of New Orleans, 579 So.2d 931, 939 (La.1991). In the case sub judice, Defendants were proprietors of a business which operates as the sole medium for the delivery of written correspondence for the vast majority of citizens. The evidence indicates that, on occasion, Ms. Poynter may have been required to enter the premises of the post office to pick up or sign for her mail. See Exs. A & C, Pls.' Opp. to Defs.' Mot. to Dismiss. Accordingly, Defendants had a duty to exercise reasonable care for the safety of its patrons, including Ms. Poynter. The legal duty to use reasonable care is designed precisely to protect against the risk of harm associated with unsafe premises. The affidavits of Mr. & Ms. Poynter assert facts sufficient to generate a genuine issue of material fact on the issue of causation. Likewise, a genuine issue of material fact exists as to whether Defendants breached their duty to exercise reasonable care under the circumstances. Accordingly, Ms. Poynter states a claim for relief under Louisiana law.

of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." Hutchinson, *supra.*

Here, the property which caused the damage is in the custody of defendant. The second inquiry - whether the property had a condition which created an unreasonable risk of harm - has not been sufficiently addressed such that this Court can enter summary judgment. There is indication in the briefing:

- plaintiff suffers from a physical disability;

- defendant was aware its facility was not handicapped accessible, and therefore, "the Eunice Post Office has informed the public that it may be accommodated by telephoning the facility and requesting that Postal personnel hand deliver mail and/or other products or services to the customer at his or her vehicle" [Rec. Doc. 14, p.14];

- "a sign is maintained near the entrance which reads: 'Caution. Watch your step. Use Handrail.'" [Id.]

Plaintiff, however alleges she was not informed there was an accommodation made available by the post office, and the warning given did not adequately address the risk present. No information has been provided by movant – who has the burden to show they are due the relief requested – addressing the adequacy of these warnings, the extent to which notice was provided to disabled persons, whether there are other post offices within close proximity where plaintiff could collect her mail, etc. Additionally, no information has been provided to the Court tending to show whether defendant knew or should have known its steps did or did not create an unreasonable risk of harm, other than defendant's admissions it was aware the facility was not handicapped accessible and had posted a sign near the entrance of its facility. In sum, defendant simply has not carried its burden, as movant, tending to show it is entitled to the relief it has requested.

## Conclusion

In consideration of the foregoing, the "Defendant's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1), or Alternatively, Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56(b)" [Doc. 14] is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to any claims of negligence, wherein plaintiff asserts a claim of premises liability based solely upon an inherent defect in the premises or under a standard of care couched in strict liability. The motion is denied in all other respects.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 29 day of January, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE